Filed 3/10/23  P. v. Sanchez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HECTOR DANIEL SANCHEZ,<br><br>    Defendant and Appellant. | D080380<br><br><br><br>(Super. Ct. No. RIF2002495) |

APPEAL from a judgment of the Superior Court of Riverside County, Randall S. Stamen, Judge.  Affirmed.

Robert F. Somers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Paige B. Hazard, Anthony DaSilva and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Hector Daniel Sanchez of making a criminal threat (Pen. Code, § 422[1]) and misdemeanor vandalism (§ 594). After the jury convicted him, and before sentencing, Sanchez filed a motion for mental health diversion under section 1001.36. The trial court denied the motion as untimely and sentenced Sanchez to one year and four months in prison. On appeal, Sanchez challenges the denial of his motion, asserting that the motion was timely because it was filed before sentencing.

After his appeal was briefed, we permitted Sanchez to submit supplemental briefing on the issue of whether he is eligible for resentencing based on a new statute, section 17.2, which requires trial courts to consider the least restrictive means of punishment available and to consider alternatives to incarceration.[2] As we explain, we reject Sanchez's arguments and affirm the trial court's order denying his diversion motion and the judgment of conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2020, Sanchez went to his mother's home in Moreno Valley. Sanchez, who was homeless, was not allowed inside of the house because of the Covid-19 pandemic. During trial, Sanchez's mother testified that he was permitted to be in the backyard and that she provided him with food. Sanchez's mother told the jury that Sanchez asked her if he could use the bathroom inside the house. She let him in, but she thought he seemed unwell and believed he was under the influence of drugs. Sanchez and his mother began to argue. Sanchez picked up a bottle, threw it on the ground, and stormed out of the house.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

[2] Sanchez's motion to file a supplemental reply brief, which was previously deferred to this panel, is granted.

2

Sanchez's mother testified that she then went to lock the door to prevent Sanchez from coming back inside. As she closed the door, she saw Sanchez pick up a shoe, which he threw and shattered a window of the house. Fearful of her son, she left the house through the front door and ran into her neighbor's home. She went upstairs and knocked on a bedroom door.

Her neighbor's daughter, Cristal P., opened the bedroom door. Sanchez's mother held her cellphone, and she was crying and shaking. She told Cristal she was afraid and asked her to call the police. Cristal testified that earlier that morning she heard Sanchez in the backyard screaming that he was going to kill his mother. Cristal called 911. During the call, Cristal saw Sanchez walking by her house and she feared he might come inside and attack his mother.

Riverside County Sheriff's Deputy Rudy Alvarado responded to the call. Alvarado found Sanchez nearby and placed him under arrest. Alvarado took Sanchez to his mother's house. Alvarado interviewed Sanchez's mother, who was upset, scared, and shaking. She said Sanchez was not allowed inside, and he came in through the unlocked back door. She also told Alvarado that Sanchez threatened to kill her and her husband, and she did not want him to come back into the house. Deputy Alvarado saw a broken window in the kitchen and Sanchez's mother said Sanchez threw his shoe through the window. Sanchez's mother told Alvarado repeatedly that Sanchez had threatened her and her husband's lives, and that she believed Sanchez was capable of murder. She told Alvarado she wanted to press charges against her son.

Sanchez was charged with making a criminal threat (§ 422; count 1) and misdemeanor vandalism (§ 594; count 2). The case went to trial and, on December 9, 2021, the jury found Sanchez guilty of both counts. Before the

3

sentencing hearing, defense counsel submitted a sentencing memorandum asking the court to reduce the criminal threat conviction to a misdemeanor or, alternatively, to continue the sentencing hearing for Sanchez "to complete a one-year inpatient treatment program, and upon successful completion thereof, sentence him to a misdemeanor." (Italics omitted.)

Defense counsel also submitted a motion seeking to continue sentencing and for the court to order an evaluation under section 1017, at no cost to Sanchez, so that he could seek relief under section 1001.36. Two days before the scheduled sentencing hearing, defense counsel submitted a request for mental health diversion under section 1001.36. In support, counsel submitted the report of a clinical therapist who evaluated Sanchez the day after his arrest while he was in jail. Sanchez had been placed into a safety cell after making homicidal statements. The therapist reported that Sanchez was experiencing delusions and symptoms consistent with schizophrenia.

On January 6, 2022, the trial court continued the sentencing hearing because it had not yet received a report from the probation department. On January 12, 2022, the District Attorney filed an opposition to the motion for mental health diversion, asserting the motion should be denied as untimely.

At the continued sentencing hearing on January 19, 2022, the trial court denied the motion for mental health diversion as untimely and denied Sanchez's request to reduce the felony conviction to a misdemeanor. The court sentenced Sanchez to prison for the low term of one year and four months on the criminal threat conviction and to a concurrent term of 364 days on the misdemeanor vandalism conviction. The court also credited Sanchez with 676 custody credits, which exceeded the sentence, and ordered Sanchez to be released and to report to probation. Sanchez timely appealed.

4

I

Sanchez argues that the trial court erred by denying his motion for mental health diversion under section 1001.36.  He asserts this court should follow the decision of the Third District Court of Appeal in *People v. Curry* (2021) 62 Cal.App.5th 314, review granted July 14, 2021, S267394 (*Curry*), and conclude that such motions are timely so long as they are filed before sentencing.  Noting the issue is currently pending before the California Supreme Court, the Attorney General responds that the trial court properly denied the motion and urges us to reject *Curry* and agree with the decisions of three other appellate districts, including this court's decision in *People v. Rodriguez* (2021) 68 Cal.App.5th 584, review granted November 10, 2021, S270985 (*Rodriguez*), which have concluded that a diversion request under section 1001.36 must be made either before trial or before guilt is adjudicated.  (See *Rodriguez,* at p. 589 [request made after guilty plea untimely]; *People v. Braden* (2021) 63 Cal.App.5th 330, review granted July 14, 2021, S268925 [ineligible if request is made after trial begins], and *People v. Graham* (2021) 64 Cal.App.5th 827, review granted September 1, 2021, S269509 [request after guilt determined untimely] (*Graham*).)

Effective June 27, 2018, the Legislature enacted sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders.  (Stats. 2018, ch. 34, § 24.)  Section 1001.36 provides that a trial court may grant pretrial mental health diversion if it finds that the defendant suffers from a qualifying mental disorder, the disorder played a significant role in the commission of the charged offense, and the defendant's symptoms will respond to mental health treatment. (§ 1001.36, subd. (f)(1)(A)–(D); *People v. Frahs* (2020) 9 Cal.5th 618, 626–627

(*Frahs*).) The statute specifically defines "pretrial diversion" as "the *postponement of prosecution*, either temporarily or permanently, at any point in the judicial process *from the point at which the accused is charged until adjudication*, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f), italics added.) The maximum period of diversion is two years, and if the defendant performs satisfactorily in diversion, the trial court must dismiss the criminal charges that were the subject of the criminal proceedings at the time of the initial diversion. (§ 1001.36, subds. (c)(3), (e).)

*Frahs* involved the question of whether section 1001.36 relief was available to a defendant whose convictions were still under direct appellate review when the statute became effective. Resolution of this question "turned on whether the Legislature, in enacting section 1001.36 had ' "clearly signal[ed] its intent" ' to overcome the presumption erected by *In re Estrada* (1965) 63 Cal.2d 740 that statutes having an ameliorative effect in criminal cases apply retroactively to convictions that are not yet final." (*Graham, supra*, 64 Cal.App.5th at p. 834.) "*Frahs* ruled that the ' "until adjudication" ' language in section 1001.36 did not constitute 'clear' signaling [citation], such that defendants whose convictions were in the 'pipeline' of direct appellate review when section 1001.36 took effect could still take advantage of the statute. But *Frahs* was careful to limit its analysis to the availability of section 1001.36 to these pipeline defendants, and to note that its holding involved a 'quite different' question from how the 'statute normally will apply going forward' as to the defendants who had had the opportunity [to] seek pretrial diversion from the very beginning." (*Ibid*.)

Since *Frahs*, the appellate courts have come to different conclusions about how late in the process relief can be sought by a defendant who is prosecuted after the effective date of section 1001.36. Under *Graham*, a

6

request for diversion under the statute must be made before guilt is determined. (*Graham, supra*, 64 Cal.App.5th at p. 833 ["a request for 'pretrial diversion' under section 1001.36 is timely only if it is made prior to the jury's guilty verdict"], review granted.) Under *Braden*, "a defendant is ineligible for diversion under section 1001.36 after his trial begins." (*Braden, supra*, 63 Cal.App.5th at p. 333, review granted.) In *Rodriguez*, this court concluded that a request made after the entry of a guilty plea is untimely. In contrast, under *Curry*, a defendant may request diversion up to and until the time of sentencing. (*Curry, supra*, 62 Cal.App.5th at p. 321 ["section 1001.36 contemplates mental health diversion until entry of the judgment of conviction"], review granted.)

We agree with the Attorney General that the majority of the published decisions to consider this issue correctly interpret section 1001.36 to preclude relief if the request for diversion comes after a conviction. As we stated in *Rodriguez*, "[b]oth *Graham* and *Braden* found *Curry*'s reliance on dicta from *Frahs* problematic, and so do we. (*Graham, supra*, 64 Cal.App.5th at p. 834, review granted; *Braden, supra*, 63 Cal.App.5th at p. 341, review granted.) We also agree with *Graham* that the broad statutory scheme observed in *Curry* was not, of itself, sufficient to 'countermand ... the otherwise clear intent of the Legislature to require *pretrial* diversion to be sought before a verdict.' (*Graham*, at p. 835.) Accordingly, like the *Graham*[, *Braden* and *Rodriguez*] courts, we decline to follow *Curry*." (*Rodriguez, supra*, 68 Cal.App.5th at pp. 591–592, review granted.)

"[E]ligibility for mental health diversion [is] governed by the diversion statute and not by *Frahs*" for defendants like Sanchez who had the opportunity to seek section 1001.36 diversion from the beginning. (*Rodriguez, supra*, 68 Cal.App.5th at p. 589, review granted.) "Section

7

1001.36 is not just a dismissal statute; rather, it presents dismissal as an incentive and reward for successful completion of [the] legislatively prescribed processes.  And since this reward becomes available only 'at the end of the period of diversion,' there must necessarily be a 'period' of time during which the defendant actually participates in diversion before the defendant can become eligible for dismissal." (*Rodriguez,* at p. 592.)  The phrase "until adjudication" in section 1001.36 "means until adjudication of guilt, whether by a jury (as in *Graham*) or by a guilty plea (as [in *Rodriguez*])." (*Rodriguez,* at pp. 592–593.)

Here, the trial court properly rejected *Curry* and relied on *Braden*, which held that in the context of section 1001.36, " 'adjudication' refers to the *process* of adjudicating an issue, such as a court's adjudication of guilt or innocence through a trial." (*Braden, supra*, 63 Cal.App.5th at p. 336.) Accordingly, the trial court did not err when it ruled that Sanchez's motion for mental health diversion, which was filed after he had been found guilty by a jury but before sentencing, was untimely.

II

In supplemental briefing, Sanchez also argues that his case should be remanded for resentencing in light of newly enacted section 17.2.  The Attorney General responds that even assuming the new law applies retroactively in this case, remand is not appropriate since the trial court's statements make clear it would not have made a different sentencing decision under the new law and, further, Sanchez told the probation department he was not interested in probation.

New section 17.2 provides:  "(a) It is the intent of the Legislature that the disposition of any criminal case use the least restrictive means available. [¶] (b) The court presiding over a criminal matter shall consider alternatives

8

to incarceration, including, without limitation, collaborative justice court programs, diversion, restorative justice, and probation. [¶] (c) The court shall have the discretion to determine the appropriate sentence according to relevant statutes and the sentencing rules of the Judicial Council." (Assem. Bill No. 2167 (2022–2023 Reg. Sess.) § 2, added September 29, 2022.) The law took effect on January 1, 2023. (Cal. Const., art. IV, § 8, subd. (c).)

For purposes of this case, we assume without deciding that section 17.2 is retroactive to nonfinal criminal cases under *In re Estrada, supra,* 63 Cal.2d 740. In such situations, where the trial court is unaware that it had sentencing discretion—as often occurs when new legislation has been enacted—the Supreme Court has held that "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; see also *People v. Mataele* (2022) 13 Cal.5th 372, 437 [applying "clear indication" standard to new discretion to dismiss serious felony prior].)

Here, as the Attorney General argues, the record is clear that the trial court would not have sentenced Sanchez any differently had section 17.2 been in effect at the time of sentencing. As an initial matter, the court sentenced Sanchez to the low term, not the presumptive middle term. Further, the court considered, but rejected, probation based on Sanchez's statements to the probation department that he would not abide by the terms of probation, and that he did not want to attend treatment for mental health or substance abuse issues. The court also considered and credited Sanchez's statement to

9

the probation department that he thought the appropriate sentence for his crimes was to "finish his time" in custody.[3]

The trial court also carefully considered Sanchez's request to reduce the felony conviction to a misdemeanor, and found, as the jury did, that Sanchez's criminal conduct did not warrant such treatment. The court pointed to the 911 call and Sanchez's mother's decision to run into her neighbor's home, which showed her evident and intense fear of Sanchez during the incident. Sanchez does not challenge these findings and provides no reason for us to conclude the court would reassess them in light of the general language of section 17.2.

The new law did not provide the trial court with any specific directive that would change the outcome of this case. Instead, section 17.2 requires the trial court to consider less restrictive alternatives to prison. The record shows the court did just this in its evaluation of the defense's sentencing memorandum requesting reduction of the felony charge to a misdemeanor and requesting the court order Sanchez into a treatment program. In this circumstance, the record is clear that the court would have made no different sentencing choice even had section 17.2 already been in effect.

---

[3]    Although Sanchez's defense attorney stated her client did desire probation at the hearing, she did not offer her client's statements to confirm this change in position.

## DISPOSITION

The order denying Sanchez's motion for mental health diversion and judgment of conviction are affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

DATO, J.